**Mary E. RICKERT, Personal Representative of the Estate of Thomas J. Rickert, deceased, Plaintiff,**

v.

**MITSUBISHI HEAVY INDUSTRIES, LTD., a Japanese corporation; et al., Defendants.**

No. 95–CV–0072–B.

United States District Court, D. Wyoming.

June 19, 1996.

Bruce A. Lampert, Richard F. Schaden, on the briefs, Denver, CO, for Plaintiff.

Marshall S. Turner, Andrew T. Houghton, on the briefs, New York City, G.G. Greenlee, on the briefs, Cheyenne, WY, for Defendants.

### *ORDER REVERSING GRANT OF SUMMARY JUDGMENT*

BRIMMER, District Judge.

In *Rickert v. Mitsubishi Heavy Industries, Ltd.,* 923 F.Supp. 1453 (D.Wyo.1996),

this Court granted summary judgment in favor of Mitsubishi after concluding that Rickert had failed to produce any evidence in support of her claim that Mitsubishi "knowingly misrepresented to the [FAA], or concealed or withheld from the [FAA], required information" concerning the MU–2. 49 U.S.C. § 40101 note, Section 2(b)(1). Rickert's failure to produce any such evidence meant that the General Aviation Revitalization Act's statute of repose barred her claims against Mitsubishi.

■ As the Court stated in its first order, GARA's "knowing misrepresentation" exception requires a plaintiff to produce evidence sufficient to create a genuine issue of material fact concerning: (1) knowledge; (2) misrepresentation, concealment, or withholding of required information to or from the FAA; (3) materiality and relevance; and (4) a causal relationship between the harm and the accident. *Rickert,* 923 F.Supp. at 1456. In closing, the Court observed that Rickert could not satisfy this exception simply by dressing up what amounted to differences of design opinion (and theories about MU–2 crashes) as knowing misrepresentations or concealments. *Id.* at 1461.

After entry of this Court's order, Rickert filed a motion to reconsider. Rickert devoted the majority of her motion to arguing the merits of this Court's initial summary judgment ruling. Although the Court found Rickert's "merits" argument singularly unpersuasive, it was sympathetic to her "discovery" argument. *See* April 29, 1996 "Order Granting Motion to Stay Judgment" (attached). Rickert asserted, in short, that Mitsubishi had stonewalled her discovery efforts and that had she been able to complete certain discovery, she would have been able to resist Mitsubishi's GARA-based motion for summary judgment.

Because the Court knew that Mitsubishi had in fact been less than forthcoming with its discovery responses, the Court ordered limited additional discovery. It also ordered the parties to file supplemental summary judgment briefs at the conclusion of that discovery. The parties have completed this discovery and filed their briefs.

## Analysis

This Court's earlier order obviously served as a wake-up call for Rickert. She apparently now realizes that GARA has altered the legal landscape for aviation product liability lawsuits, and that she cannot withstand a GARA-based motion for summary judgment simply by creating a genuine issue of material fact concerning Mitsubishi's negligence or strict liability. Rickert now understands that she must produce some evidence showing that Mitsubishi knowingly misrepresented something to, or concealed something from, the FAA concerning the MU–2's performance and handling.

■ Before considering the evidence that Rickert has produced, the Court pauses to address Mitsubishi's argument that Rickert's evidence is untimely. First, this Court is not so wedded to the general principle of "finality" that it is willing to uphold finality at the expense of truth. Finality has its place in the law, but this Court is not so hidebound that it is unwilling to consider highly probative evidence uncovered during a court authorized post-judgment discovery period. Second, Mitsubishi relies on the mistaken premise that when this Court re-opened discovery for 30 days, it authorized only that discovery set forth in its order.

At the time the Court issued its order staying judgment and permitting additional discovery, it was aware of certain discovery matters that had not been resolved before the Court granted summary judgment. To the extent that it was aware of these matters, the Court ordered that they be completed. The Court did not, however, prohibit Rickert from conducting—on her own initiative—additional discovery that did not require Mitsubishi's cooperation or participation. Indeed, the Court thought it possible that the specific additional discovery it authorized might simply serve as the initial link in a longer discovery chain. Rickert had 30 days to construct such a chain, and she has done so.

■ This chain is not long—consisting primarily, if not exclusively, of two affidavits—but it is sufficient to satisfy GARA's "knowing misrepresentation" exception.

## I. THE McGREGOR AFFIDAVIT

Rickert has submitted an affidavit signed by Thomas McGregor, who worked for Mitsubishi from 1978 to 1986 as Director of Flight Operations and as a consultant. McGregor logged in excess of 3400 hours as pilot in command of the MU–2. In his affidavit, McGregor states that he and other employees were aware of many MU–2 accidents, and that they attributed most of these accidents to ice accretion. This alone would not be sufficient to show a knowing misrepresentation, were it not for the fact that McGregor then states:

- "That this problem was virtually kept within the company and neither seriously investigated nor disclosed to the public or the Federal Aviation Administration."

- "That even after the FAA took another look at the safety of the MU–2 with regard to flight into known icing as a Special Certification Review, we only tested the short body aircraft when we knew that the long body aircraft was the problem. We withheld this distinction from the FAA."

- "We withheld serious limitations to safety of flight in icing conditions from the FAA and the public."

- "Mitsubishi continues to maintain an office in Texas which I believe is used primarily to defend liability and conceal the icing problem."

If what McGregor says here is true, Rickert will be able to prove that Mitsubishi misrepresented certain things about the MU–2 to the FAA, and that it withheld certain information concerning the MU–2 from the FAA. At this stage of the litigation, the Court cannot and will not attempt to determine whether McGregor's statements are true. For summary judgment purposes under GARA, Rickert need only create a genuine issue of material fact concerning a knowing misrepresentation. With McGregor's affidavit, she has done so.

## II. THE COLE AFFIDAVIT

Rickert also has submitted an affidavit signed by Clifford Cole, who worked for Mitsubishi from 1973 to 1985 as South American Regional Manager, International Manager, and Vice President (International). Cole was responsible for setting up and maintaining international distribution and sales of MU–2 aircraft. Cole worked with foreign authorities investigating MU–2 crashes, and logged over 1500 hours as pilot in command of the MU–2. Like McGregor, Cole states in his affidavit that he was aware of numerous MU–2 crashes, and that he and other Mitsubishi employees attributed many of these crashes to ice accretion. Again, these statements would not be sufficient to establish a knowing misrepresentation were it not for the fact that Cole then states:

- "The problem of horizontal (tail) plane icing on long body MU–2 aircraft was secretly maintained within Mitsubishi, and never properly investigated or disclosed to the public or the Federal Aviation Administration."

- "Based on what I personally know, heard and observed, Mr. Nakagawa and Mitsubishi actively covered-up the problem of horizontal tail plane icing on the long body MU–2 aircraft, and withheld and concealed this information from the FAA before, during and after the Special Certification Review."

- "Among other acts, during the Special Certification Review, Mitsubishi only tested the short body aircraft when its upper level management clearly knew that it was the long body aircraft which had a dangerous loss of control problem due to horizontal (tail) plane icing."

Again, if what Cole says is true, Rickert will be able to prove that Mitsubishi misrepresented certain things about the MU–2 to the FAA, and that it withheld certain information concerning the MU–2 from the FAA. Cole's statements, therefore, also satisfy GARA's requirement that Rickert produce some evidence creating a genuine issue of material fact concerning a knowing misrepresentation or concealment.[1]

---

1. Because the McGregor and Cole affidavits create factual issues sufficient to withstand Mitsubishi's summary judgment motion, the Court need not consider the additional evidence that Rickert has submitted in her supplemental response. The Court notes, however, that these other items

## III. MITSUBISHI'S RESPONSE

If Mitsubishi is to be believed, the McGregor and Cole affidavits are worthless. With generous doses of hyperbole and vitriol, Mitsubishi attacks these obviously damaging affidavits on the ground that they "complete[ly] lack ... any demonstrated personal knowledge, factual basis and competence," and contain "nothing more than hearsay statements and conclusory allegations." [2] More specifically, Mitsubishi attacks the affidavits by explaining how McGregor and Cole:

- Discuss matters concerning which they have no personal knowledge;
- Offer opinions about the MU–2 that are contradictory;
- Make allegations that are vague and unsubstantiated;
- Proffer statements that contradict their deposition testimony from other cases involving the MU–2; and
- Make statements that are speculative and factually erroneous.

Mitsubishi further asserts that the affidavits are "self-serving," [3] that they are full of hearsay, and that neither McGregor nor Cole is credible. Mitsubishi even suggests that McGregor may have fabricated his affidavit testimony, and that Cole may have conjured his testimony from nothing.

If all of these things are true, then the stage should be set for explosive and devastating cross-examinations. Yet, at this juncture of the litigation, the Court cannot share Mitsubishi's opinions about the McGregor and Cole affidavits.

■ To support its assault on Rickert's affidavits, Mitsubishi provides the Court with all manner of its own evidence—in the form of affidavits, depositions, and documents—designed to prove McGregor and Cole wrong. In doing so, Mitsubishi again has forgotten that at the summary judgment stage, the Court will neither weigh evidence nor assess credibility. What Mitsubishi has done, however, is confirm this Court's conclusion that there are genuine issues of material fact concerning the matters set forth in the McGregor and Cole affidavits—matters that will be key not only to Mitsubishi's GARA defense, but also to Rickert's negligence and strict liability claims.

If Mitsubishi is as successful in dismantling McGregor's and Cole's testimony as it apparently thinks it will be, then it can move the Court for a directed verdict based on GARA, or it can argue this issue to the jury with considerable force. If, however, Mitsubishi simply manages to poke factual and credibility holes (however large) in McGregor's and Cole's testimony, then that is something it will have to present to the jury and argue in closing.[4] A summary judgment ruling simply is not the place to decide whether Rickert's witnesses or Mitsubishi's witnesses are more credible.

### Conclusion

This case should stand as a lesson for all plaintiffs who would bring product liability lawsuits against aircraft manufacturers. GARA erects a formidable first hurdle to such suits, not only at the summary judgment stage but also at the trial stage. The plaintiff who leaps GARA's knowing misrepresentation exception then faces the usual product liability obstacles.

Rickert's task, therefore, is two-fold. She must satisfy GARA's knowing misrepresenta-

---

are similar to those Rickert attached to her first response. They may show that Mitsubishi was negligent or even reckless, but they do not establish that Mitsubishi misrepresented anything to, or concealed anything from, the FAA. At best, they create an aura of wrongdoing, but such an aura does not satisfy GARA's specific scienter and deception requirements.

2. The Court cannot help but to observe that rarely are things so clear. Mitsubishi's rhetorically overblown attack on Rickert's affidavits attempts to prove far too much.

3. The Court is unmoved by the prospect of "self-serving" affidavits. If an affidavit is not self-serving (i.e., does not serve the interests of the party providing it), then there is no reason to offer it.

4. Mitsubishi can, of course, bring a pre-trial motion for summary judgment (and sanctions) if it is able to prove its bold allegation that Rickert's affidavits may have been fabricated. Because such a motion would raise serious issues of misconduct, Mitsubishi should be sure of itself before doing so.

tion exception, and then prove her product liability claims. Her opportunity to do so will arrive on October 15, 1996.

The Court therefore **ORDERS** that its April 29, 1996 "Order Granting Motion to Stay Judgment" is lifted, and its April 12, 1996 "Order Granting Motion for Summary Judgment" is reversed. The Court denies Mitsubishi's motion for summary judgment, and sets this case for trial on October 15, 1996. Within 15 days of this Order's date, the parties must meet with the Magistrate Judge to establish an appropriate pre-trial schedule.

## APPENDIX

### ORDER GRANTING MOTION TO STAY JUDGMENT AND PERMIT DISCOVERY

As the evidence in this case currently stands, the Court is not willing to reconsider or alter its summary judgment order. The Court is well aware of GARA's disjunctive language, and its order neither states nor implies that it was considering only whether Mitsubishi knowingly "misrepresented" to or "concealed" something from the FAA. As an initial matter, the Court notes that it can discern little difference between "concealing" something and "withholding" something. If Mitsubishi withheld something from the FAA, it probably concealed something from the FAA. Conversely, if Mitsubishi concealed something from the FAA, it probably withheld something between the FAA. Because the term "concealment" is broader than and undoubtedly encompasses a "withholding," this Court did not think it necessary to refer to the "concealment or withholding exception."

The Court would have thought it fairly obvious that its reference to GARA's "knowing misrepresentation" exception merely was convenient shorthand which the Court used to refer to GARA's "misrepresentation, concealment, or withholding" exceptions. But because it apparently was not obvious, the Court states for the record that its use of the term "misrepresentation exception" in its summary judgment order encompasses each of GARA's disjunctive exceptions (i.e., "mis-representation, concealment, or withholding").

Given this fact, the Court is not persuaded by Rickert's parsing of GARA's language, and her assertion that the Court did not consider whether Mitsubishi withheld something from the FAA. The Court fully considered whether Rickert had submitted evidence creating a genuine issue of material fact about Mitsubishi's alleged "misrepresentations," "concealments," or "withholdings," and concluded that Rickert had not presented evidence sufficient to create such an issue. The same holds true today.

It is apparent once again that Rickert misapprehends the nature of GARA. The gist of her case is that Mitsubishi negligently, or perhaps recklessly, designed the MU–2. To support this contention, Rickert presents the testimony of various people (i.e., Kennedy, Vinton, and Evans) who think that Mitsubishi could and should have designed the MU–2 differently. They also think that Mitsubishi has an obligation to do something about the MU–2's alleged design flaws.

As Rickert would have it, Mitsubishi has an obligation—under Federal Air Regulation § 21.3—to report these differences of opinion to the FAA. This regulation cannot and does not require aircraft manufacturers to notify the FAA everytime that an engineer, a pilot, or a civilian writes that a particular aircraft should have been designed differently or that it is flawed. Were that the rule, aircraft manufacturers would spend most of their time reporting to the FAA and the FAA would be buried in reports noting differences of opinion concerning aircraft design and aircraft failure.

More importantly, Rickert's understanding of Mitsubishi's obligations under FAR § 21.3 would effectively gut GARA. If this regulation required aircraft manufacturers to report all differences of opinion, then the failure to report these differences of opinion would constitute a "withholding." This "withholding," in turn, would satisfy one of GARA's exceptions and allow parties to bring suits 20, 30, or 40 years after the manufacture of an aircraft, provided only that: (1) the party produced an article, a letter, or a report stating that the aircraft had been

poorly or incorrectly designed or manufactured; and (2) the party showed that the manufacturer had not reported the article's, letter's, or report's contentions to the FAA. That is not the law, and neither GARA nor FAR § 21.3 produce such an absurd result.

This issue aside, the Court agrees with Rickert's contention that Mitsubishi's discovery conduct has been abysmal. Mitsubishi's conduct with respect to producing the Vinton letters and a Rule 30(b)(6) witness has been entirely improper. This Court does not and will not tolerate dilatory discovery tactics. In this Court, the general rule is that most discovery should be self-executing, and that the remainder of discovery should be conducted quickly and efficiently. Mitsubishi apparently fails to understand this rule.

The Court is sensitive to Rickert's allegation that had Mitsubishi not stymied her discovery efforts, she would have been able to present evidence sufficient to defeat Mitsubishi's summary judgment motion. For this reason, the Court will stay its summary judgment order and allow limited additional discovery.

No later than ten days from this order's date, Mitsubishi will produce the remaining four "Vinton letters" that it failed to produce before this Court entered its order. If there are any additional letters between Vinton and Nakagawa, Mitsubishi will produce those as well. Within the same time period, Mitsubishi also must produce its best copy of the Evans letter, and any additional documents it may have concerning Evans and his icing opinions.

No later than twenty days following the date on which it produces these documents, Mitsubishi will produce its Rule 30(b)(6) witness for a deposition in the United States. The Court will not tolerate further discovery disputes caused by Mitsubishi's stonewalling. This Court will hear all discovery disputes from this point forward, and will not hesitate to sanction any party who fails to comply with the discovery rules and this Court's orders.

The Court therefore **ORDERS** that its summary judgment order is stayed pending the limited additional discovery set forth in this order. The additional discovery should be complete no later than thirty days from this order's date. Rickert has ten days from the date on which she completes her additional discovery to file a supplemental response to Mitsubishi's summary judgment motion. Rickert will serve her supplemental response on Mitsubishi by facsimile, and Mitsubishi will have five days from that date in which to respond.