Brian **STEWART,** Individually and as Personal Representative of the Estates of Connie and Sarah Stewart, Deceased, and as Natural Parent, Guardian and Conservator of Caryn Stewart, and Natural Guardian of Christian Stewart, Greg Bryan, Individually and as Personal Representative of the Estate of Andrew Bryan, Deceased, Sheila Bryan, Individually and as Personal Representative of the Estate of Andrew Bryan, Deceased, and Doug Bryan, Individually, Appellees

v.

**PRECISION AIRMOTIVE, LLC,** Precision Airmotive Corporation, and AVCO Corporation, on behalf of its Lycoming Engines Division, Appellants.

Superior Court of Pennsylvania.

Argued May 19, 2010.

Filed Sept. 13, 2010.

Reargument Denied Nov. 22, 2010.

Catherine Slavin, Philadelphia, for appellant.

William J. Conroy, Wayne and Mary P. Gaston, Seattle, WA, for Precision Airmotive, appellee.

Bradley J. Stoll, Philadelphia, for Stewart, appellee.

BEFORE: ALLEN, LAZARUS and FREEDBERG *, JJ.

OPINION BY FREEDBERG, J.:

Appellants, Precision Airmotive, LLC, and Precision Airmotive Corporation (collectively, "Precision") and AVCO Corporation, on behalf of its Lycoming Engines Division ("Lycoming") appeal from the orders of the trial court denying in part their respective motions for summary judg-

* Retired Senior Judge assigned to the Superior Court.

ment.[1] The Appellees are Brian Stewart, individually and as the personal representative of the Estates of Connie and Sarah Stewart, deceased, as natural parent, guardian and conservator of Caryn Stewart, and as natural guardian of Christian Stewart; Greg Bryan, individually and as personal representative of the Estate of Andrew Bryan, deceased; Sheila Bryan, individually and as personal representative of the Estate of Andrew Bryan, deceased, and Doug Bryan, individually (collectively, "Appellees"). We quash the appeals in part and affirm the order of the trial court in part.

On March 27, 2005, a Piper Cherokee aircraft crashed in West Union, Iowa, killing Andrew Bryan, Connie Stewart and Sarah Stewart. Caryn Stewart was critically injured in the crash. The aircraft was manufactured in 1964. It was equipped with a Lycoming O–540–B4B5 engine.[2] The engine included a Marvel Schebler MA–4–5 carburetor manufactured by the Marvel Schebler Division of Borg Warner Corporation. In March 1991, the aircraft engine underwent an overhaul, during which the carburetor received a float system replacement.

Precision purchased the Marvel Schebler carburetor product line in 1990 and obtained a FAA issued Parts Manufacturer Approval (PMA) certificate.[3] The float system replacement was manufactured by a predecessor to Precision.

Appellees filed suit against Precision and Lycoming, alleging that a malfunction in the aircraft engine's carburetor caused the crash. Appellees asserted claims of strict liability, negligence, negligent infliction of emotional distress, misrepresentation and concert of action.[4]

On May 4, 2009, Lycoming moved for summary judgment on three grounds. First, according to Lycoming, the engine and carburetor were more than 40 years old. Therefore, the 18–year statute of repose included in the General Aviation Revitalization Act of 1994[5] (hereinafter "GARA") bars any personal injury claims against Lycoming. See GARA § 2(a).[6] Second, Lycoming did not manufacture the carburetor float system replacement parts installed on the aircraft in 1991. Therefore, according to Lycoming, the rolling exception to the statute of repose, set forth in GARA § 2(a)(2), does not apply to Lycoming.[7] Third, according to Lycoming,

1. The appeals were consolidated on December 14, 2009. Order of Superior Court, December 14, 2009 (*per curiam*).

2. Lycoming remains the Type Certificate holder for this engine type. A Type Certificate is issued by the Federal Aviation Administration (FAA) and authorizes the holder to manufacture a particular aircraft engine for sale in the United States. *See* 14 C.F.R. Part 21.

3. A PMA authorizes the holder to manufacture "a modification or replacement part for sale for installation on a type certificated product." 14 C.F.R. § 21.303.

4. The trial court granted summary judgment in favor of Appellants on the claim for negligent infliction of emotional distress on July 14, 2009.

5. Pub.L. No. 103–298, 108 Stat. 1552 (codified as amended at 49 U.S.C. § 40101, Note).

6. GARA § 2(a) provides:

Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred ... after the applicable limitation period [of eighteen years].

7. GARA § 2(a)(2) extends the general statute of repose an additional 18 years from the date of the installation of replacement parts in the following manner:

Appellees failed to plead with the required specificity, and could not prove, a knowing misrepresentation, withholding or concealment of required information from the FAA, which causally related to the alleged harm suffered by them so as to invoke the fraud exception set forth in GARA § 2(b).[8]

The trial court granted Lycoming's motion in part, but it denied the motion with respect to Appellees' claims of misrepresentation and concert of action. *See* Order of the Trial Court, 8/5/09 ("Lycoming Order").[9] Lycoming timely filed a notice of appeal. It complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P.1925, essentially claiming that the trial court erred in its application of GARA §§ 2(a)(1), (2) and 2(b)(1). *See* Lycoming's Pa.R.A.P.1925(b) Statement.[10] The trial court issued a Pa.R.A.P.1925(a) opinion addressing Lycoming's claims on October 5, 2009 ("Lycoming Opinion").

On May 4, 2009, Precision moved for summary judgment on three grounds. First, according to Precision, it did not manufacture or sell the engine, carburetor or carburetor parts at issue in this case. Second, according to Precision, it is not a successor in interest to the carburetor's manufacturer; accordingly, Precision contended it may not be held liable to Appellees. Third, according to Precision, GARA § 2(a) prohibits the claims against it. Precision's motion did not address the applicability of GARA § 2(b)(1) and did not specifically challenge Appellees' claim of misrepresentation. Rather, Precision generally requested that the court dismiss "all claims that are based on alleged defects in the original carburetor." Precision Motion, at 6 ¶ 19.

The trial court granted Precision's motion in part, but it denied the motion with respect to Appellees' claims of misrepresentation and concert of action and specifically found that "there remains a question of fact as to knowing misrepresentation, concealment, [and/or] withholding of required information from the [FAA]." Order of the Trial Court, October 14, 2009, at 1–2 ("Precision Order"). Precision timely filed a notice of appeal. It complied with

---

with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

8. GARA § 2(b)(1) provides that the statute of repose does not apply:

if the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer with respect to a type certificate or airworthiness certificate for, or obligations with respect to continuing airworthiness of, an aircraft or a component, system, subassembly, or other part of an aircraft knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information

that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered.

9. On August 5, 2009, the trial court denied, generally, the motion for summary judgment as to the claim of misrepresentation, but granted the motion as to a specific claim of misrepresentation as to the mating of brass and stainless steel in the carburetor float system. Subsequently, Appellees' sought and were granted permission to amend their specific claim of misrepresentation as to the mating of brass and stainless steel in the carburetor float system. *See* Appellees' Motion, August 6, 2009; Order, September 23, 2009.

10. Notably, the trial court had granted Lycoming's motion for summary judgment based upon GARA § 2(a)(1) and (a)(2).

the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P.1925, challenging the relevance of GARA, the trial court's application of GARA § 2(b)(1) and the court's finding that there remained a question of fact. *See* Precision's Pa.R.A.P. 1925(b) Statement. The trial court issued an opinion addressing Precision's claims. Trial Court's Opinion, 12/10/09 ("Precision Opinion").

■ Preliminarily, we address Appellees' motions to quash the appeals of Lycoming and Precision, as they challenge the jurisdiction of this Court. *See Pridgen v. Parker Hannifin Corp.*, 974 A.2d 1166, 1171 (Pa.Super.2009) (*"Pridgen III "*), citing *Moyer v. Gresh*, 904 A.2d 958, 963 (Pa.Super.2006). An order denying summary judgment is interlocutory and, generally, not appealable. *See Pennsylvania Turnpike Commission v. Atlantic Richfield Co.*, 482 Pa. 615, 394 A.2d 491 (1978); Pa.R.A.P. 311 and 341. Recently, the Pennsylvania Supreme Court recognized that the collateral order doctrine may provide a narrow exception to the general rule. *Pridgen v. Parker Hannifin Corp.*, 588 Pa. 405, 905 A.2d 422 (2006) (*"Pridgen I "*).

■ "An appeal may be taken as of right from a collateral order of ... [a] lower court." Pa.R.A.P. 313(a); *Pridgen I*, 905 A.2d at 426; *Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542, 545 (1978).

A collateral order is an order [1] separable from and collateral to the main cause of action where [2] the right involved is too important to be denied review and ■ the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(b). All three factors must be present before an order may be considered collateral. *Melvin v. Doe*, 575 Pa.

264, 836 A.2d 42, 47 (2003); *Pridgen III*, 974 A.2d at 1171, *citing J.S. v. Whetzel*, 860 A.2d 1112, 1117 (Pa.Super.2004).

In *Pridgen I*, the Supreme Court permitted review of a legal question involving the scope of a manufacturer's ongoing product liability under GARA's statute of repose. *Pridgen I*, 905 A.2d at 432. The Court adopted the approach taken by the United States Supreme Court, which has recognized a "distinction between summary judgment orders reflecting legal versus factual determinations." *Pridgen I* at 432, *citing Johnson v. Jones*, 515 U.S. 304, 313–320, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).

As the United States Supreme Court has explained, the distinction is consistent with the "separateness" element of the collateral order doctrine and serves a rational narrowing function in terms of which issues may be considered as of right on interlocutory appellate review. At the same time, it leaves open an avenue for review of a comparatively smaller category of orders where the interests at stake outweigh those underpinning the final order rule.

*Pridgen I* at 432 n. 11 (citation omitted). Having concluded that the legal/factual distinction is consistent with the collateral order doctrine, the Pennsylvania Supreme Court addressed the GARA question raised by the appellants within the framework of the collateral order doctrine and determined that jurisdiction was proper. *Id.* at 433–434.

■ The appellants in *Pridgen I* also sought appellate review of whether there existed "material facts in dispute concerning the application of the misrepresentation, concealment, and withholding exception." *Id.* at 432 n. 9. The Supreme Court declined to resolve that question "because its resolution [would] entail a fact-based

review of affidavits, depositions, and other discovery materials, as opposed to resolution of a central legal controversy." *Id.; see also Johnson*, 515 U.S. at 313–20, 115 S.Ct. 2151 (concluding that a summary judgment order that determines a question of evidence sufficiency is not appealable); *Pridgen III*, 974 A.2d at 1172 (quashing an appeal which presented a question of fact). Therefore, in the context of a claim to which the scope of GARA is applicable and where the issue presented is a question of law, as opposed to a question of fact, an appellant is entitled to review of a denial of summary judgment under the collateral order doctrine. However, where the issue presented deals with the sufficiency of evidence, appellate jurisdiction to review denial of summary judgment does not exist. *Compare Pridgen I; Pridgen III.*

Lycoming frames its question before us as "identical to that previously addressed in *Pridgen I* and in *Pridgen v. Parker Hannifin Corp.*, 591 Pa. 305, 916 A.2d 619 (2007) (*"Pridgen II"*), which is whether a general aviation manufacturer can be held liable under GARA for replacement parts, installed on a general aviation aircraft, that it did not physically manufacture." Lycoming's Answer in Opposition to Appellees' Motion to Quash, 10/15/09, at 1 ("Lycoming's Answer"). For its part, Precision maintains that it seeks review of whether "the trial court incorrectly held that Precision can be liable under GARA, particularly the GARA fraud exception, even though [it] did not manufacture any part of the accident aircraft." Precision's Opposition to Motion to Quash, 1/25/10, at 1 ("Precision's Answer").

The Pennsylvania Supreme Court has emphasized that the collateral order doctrine is narrow. *Rae v. Pennsylvania Funeral Directors Association*, 602 Pa. 65, 977 A.2d 1121 (2009); *Melvin v. Doe*, 836 A.2d at 46; *see also Berkeyheiser v. A–Plus Investigations, Inc.*, 936 A.2d 1117 (Pa.Super.2007). In furtherance of this conception, the Supreme Court has adopted an issue-by-issue approach and restricted collateral appeals to those issues which independently satisfy the collateral order test. *Rae*, 977 A.2d at 1129.[11] Accordingly, we preliminarily review those specific legal questions identified by the Appellants in their answers to Appellees' motions to quash.

Lycoming's statement of the legal issue entitled to collateral review does not accurately reflect the conclusions of the trial court or Appellees' theory of liability. Lycoming intimates that the trial court concluded that it could be held liable under GARA for replacement parts that it did not manufacture. *See, supra*, Lycoming's Answer, at 1. This is incorrect. In fact, the trial court granted Lycoming summary judgment on Appellees' claims of strict liability and negligence, thus absolving Lycoming of any liability premised upon the manufacture of replacement parts for the accident aircraft's engine. *See* Lycoming Order; Lycoming Opinion, at 4 ("[Lycoming] was entitled to GARA's protection under § 2(a)(2) ... because [it] *did not manufacture the replacement parts* installed on the aircraft that allegedly caused the accident.") (emphasis added). The trial court denied Lycoming summary judgment on Appellees' claims of misrepresentation and concert of action, concluding

11. This stands in contrast to the "whole order approach," which would permit review of all issues surrounding a collateral order, provided that any one issue satisfied the test. *Rae* at 1127. The Court warned that "the whole order approach would almost certainly have the effect of increasing collateral review by encouraging creative advocates to raise claims which, while sufficient to satisfy Rule 313, are unlikely to prevail, so as to achieve immediate appellate review of secondary and otherwise unappealable claims." *Id.* at 1129.

"[u]pon review of the [motion], responses, memoranda, and record, this [c]ourt has determined that there remains a question of fact as to whether GARA's § 2(b)(1) knowing concealment exception applies to [Lycoming]." Lycoming Opinion, at 3.

Appellees' claims against Lycoming, which survived the summary judgment motion, are not premised upon Lycoming having manufactured defective replacement parts. Instead, Appellees seek to impose liability upon Lycoming for:

> false representations that the engines and fuel delivery systems used on aircraft similar to the accident aircraft were safe and that various carburetor and valve defects as described herein were not in the O–540 engines or the Precision fuel delivery systems of said engines, and said misrepresentations were intended to induce and mislead persons to believe that the engines and fuel delivery systems installed on the aircraft similar to the accident aircraft were safe.

Complaint, 3/26/2007, at 64 ¶ 166. Appellees further allege that Lycoming had a duty to disclose any known defects in the engine, carburetor or carburetor parts to regulatory authorities, including the FAA. *See, generally,* Complaint, at 19–25 ¶¶ 55–79. Thus, Appellees seek to hold Lycoming liable for breaching the duty to inform the FAA of any known defects in the engine or its component parts that would adversely affect the continued airworthiness of aircraft similar to the accident aircraft.

Lycoming also offers a series of derivative arguments, which are variations on its inaccurate characterization of the trial court decision. Lycoming argues:

(1) The trial court failed to grant it summary judgment under GARA § 2(a)(2).

(2) the trial court relied upon the fraud exception to toll the period of repose relative to any claims which asserted that Lycoming manufactured defective replacement parts.

(3) the trial court applied the fraud exception to preserve claims involving replacement parts otherwise subject to repose.

*See* Lycoming's Answer, at 7–9.

As with their initial, broad statement of the issue, Lycoming's derivative arguments do not accurately reflect the decision of the trial court or Appellees' theory of liability. Further, Lycoming has conflated the application of two exceptions to the general period of GARA repose: the rolling period of ongoing liability for replacement part manufacturers defined in Section 2(a)(2) and the fraud exception defined in Section 2(b)(1). *See* n. 7 and 8, *supra.* These exceptions are distinct and work to toll the general period of repose under very different circumstances. *See Pridgen I,* 905 A.2d at 424–425 (noting two discrete exceptions to the general period of repose), 432 (noting the distinction between the appellees' claims implicating GARA's rolling provision and the fraud exception), 435–436 (distinguishing the appropriate interpretation of the term, "manufacturer," in the context of the rolling provision from "manufacturer with respect to a type certificate" in the fraud exception).[12]

■ Finally, Lycoming contends that Appellees did not plead facts relevant to the fraud exception with the required specificity and, therefore, are not entitled to

---

12. In its second derivative argument, Lycoming expressly charges the trial court with conferring "manufacturer status under GARA" upon Lycoming "in direct conflict with *Prid-*

*gen I.*" Lycoming's Answer, at 8. This charge does not accurately reflect the Supreme Court's analysis. *See, infra,* at 16–17.

prove the exception.[13] Lycoming cites *Rickert v. Mitsubishi Heavy Industries, Ltd.*, 923 F.Supp. 1453, 1456 (D.Wyo.1996) ("*Rickert I*"), *reversed, Rickert v. Mitsubishi Heavy Industries, Ltd.*, 929 F.Supp. 380 (D.Wyo.1996) ("*Rickert II*"), in support of its contention. Lycoming's citation of *Rickert I* does not advance its cause. At their core, both *Rickert I* and *Rickert II* address whether or not the plaintiff could establish a question of fact. Fact-based inquiries are forbidden in the context of the collateral order doctrine. *Johnson; Pridgen I; Pridgen III*, at 1171 (rejecting an assertion by the appellants that the appellees failed to sufficiently plead and/or prove "scienter" as an element of the fraud exception).

■ Lycoming's formulation of the central legal issue and its derivative arguments do not accurately reflect the trial court's conclusions or Appellees' theory of liability. Further, the trial court's decision to deny Lycoming summary judgment on Appellees' claims of misrepresentation and concert of action are based upon its review of the factual record and its determination that the record established a question of fact regarding whether Lycoming affirmatively and/or fraudulently breached its ongoing duty to inform the FAA of known defects in the engine or its component parts. In accordance with *Pridgen I* and *Pridgen III*, Lycoming is not entitled to collateral review of the trial court's decision.

■ Precision has also presented an issue that does not accurately reflect the conclusions of the trial court or Appellees' theory of liability. According to Precision, the trial court improperly created a new cause of action rooted in the GARA fraud exception. Precision's Answer, at 1; *see*

*also* Precision's Appellate Brief, at 40. The trial court responded to a similar assertion in its opinion:

> Precision alleges that this [c]ourt committed error in holding that it may be liable under GARA's § 2(b)(1) exception because the exception itself does not provide a basis for liability. This [c]ourt is cognizant of the fact that § 2(b)(1) of GARA does not provide an independent basis for liability, but operates to allow claims that are otherwise time-barred by the statute to proceed against a defendant if the requisite elements for knowing misrepresentation, concealment, and/[or ]withholding of information are met.
>
> GARA precludes civil actions "for damages for death or injury to persons or damage to property" against manufacturers arising from aviation accidents occurring after an eighteen year period. [GARA § 2(a) ]. Thus, if a plaintiff establishes that GARA's § 2(b)(1) exception applies, a civil claim otherwise precluded by the statute may proceed.
>
> Here, [Appellees] assert claims against Precision for strict liability, negligence, misrepresentation, and concert of action. [n. 3] [See Complaint]. This [c]ourt's partial grant of Precision's Summary judgment Motion disposes of [Appellees'] claims for strict liability and negligence, as this [c]ourt determined that Precision did not manufacture or have successor liability for the defective carburetor. However, [Appellees'] claims for misrepresentation and concert of action are still pending.

Precision Opinion, at 6–7. This clear statement by the trial court renders Precision's assertion meritless. *See also* Preci-

---

13. Lycoming's contention mischaracterizes the conclusions of the trial court. In fact, the trial court granted Lycoming summary judg-

ment for Appellees' failure to sufficiently plead certain allegations. *See* Lycoming Order; *see also* n. 9, *supra.*

sion Order (granting Precision summary judgment in part). Accordingly, Precision is not entitled to collateral review because the trial court's ruling was not premised on an incorrect assessment of § 2(b)(1) as creating a cause of action.

■ Precision offers a series of subsidiary claims, which it asserts are also entitled to collateral review. In its first and third subsidiary claims, Precision contends that the trial court misunderstood and misapplied the term "manufacturer" in the context of GARA, in that it interpreted the term differently in the rolling provision and the fraud exception. *See* Precision's Answer, at 8, 9. In *Pridgen I*, the appellants focused on "the scope of an original manufacturer's ongoing liability under GARA's rolling provision for the alleged failure of replacement parts that it did not physically manufacture." *Pridgen I*, 905 A.2d at 432. Similarly, Precision's claims implicate the appropriate scope of the term "manufacturer." Accordingly, they are entitled to collateral review.

Precision's premise that GARA applies only to airplane "manufacturers" is correct. However, Precision's assertion that the term "manufacturer" is uniform in scope throughout GARA is incorrect. In *Pridgen I*, the Supreme Court stated, "[W]e believe that the status of type certificate holder and/or designer fall under the umbrella of manufacturer conduct for purposes of GARA." *Pridgen I*, at 436. Nevertheless, the Court narrowed its interpretation of "manufacturer" within the context of the rolling provision in order to avoid "wholly undermin[ing] the general period of repose." *Id.* The Supreme Court concluded that the term "manufacturer," in the context of the rolling provision, is limited to the actual manufacturer of a replacement product, or one who supplies the replacement product as its own. *Pridgen I*, at 437.

■ Precision's status as a PMA certificate holder does not place it outside the GARA conceptions of "manufacturer" or "manufacturer conduct." The role of the PMA certificate holder is inextricable from that of the type certificate holder. *See* 14 C.F.R. § 21.303 (A PMA authorizes the manufacture of "a modification or replacement part for sale for installation on a type certificated product."). The fraud exception expressly provides that a manufacturer may be held liable in its capacity as a type certificate holder. GARA § 2(b)(1). Further, the Supreme Court has stated that the fraud exception "expressly contemplates the duties and obligations arising out of the type certificate." *See Pridgen I*, 905 A.2d at 435–436 (distinguishing the appropriate interpretation of the term, "manufacturer," in the context of the rolling provision from "manufacturer with respect to a type certificate" in the fraud exception). Therefore, Precision's claims are without merit. The trial court did not err in concluding that Precision qualifies as a manufacturer within the meaning of the fraud exception. *See* Precision Opinion, at 4. We affirm the order of the trial court in this regard.

In its second claim, Precision asserts that the fraud exception is not applicable, because the allegedly defective replacement parts were installed in the aircraft, which crashed within the rolling period of ongoing liability, thus tolling the general period of repose. *See* Precision's Answer, at 9. As we have stated previously, the trial court absolved both Appellants from any liability arising from the manufacture of allegedly defective replacement parts. Precision has misconstrued Appellees' theory of liability. *See, supra,* at 272–73.

Precision's fourth and fifth issues implicate a question of law, but ultimately present a question of fact not entitled to collateral review. In its fourth issue, Precision

questions the extent of its reporting obligations under 14 C.F.R. § 21.3. In its fifth issue, Precision questions whether evidence produced by Appellees is "required information" under the GARA fraud exception. *See* Precision's Answer, at 9–10; Precision's Appellate Brief, at 50–54.

The trial court noted:

Precision generally complains that the elements of GARA's § 2(b)(1) knowing concealment exception were not satisfied as a matter of law. Without the benefit of a more specific complaint, we are hard-pressed to know [sic] we can only attempt to address each of the elements of the exception.

Precision Opinion, at 7. After reviewing evidence purporting to establish that Precision was aware of defects in its carburetors and component parts, the trial court concluded as follows:

In order to invoke the [fraud] exception, however, a plaintiff still must show that a defendant was required to report the information to the FAA and that the information was causally related to the harm suffered. Plaintiffs submitted evidence that Precision was subject to the reporting requirements contained in 14 C.F.R. § 21.3 and produced the expert report of Mr. William Twa that Precision had violated its reporting duty. Ex. A. pp. 6, 10–11; Plaintiff's Response to Defendants' Motion for Summary Judgment, Ex. 34.

Precision Opinion, at 10. The trial court concluded that Appellees established an issue of fact. Therefore, resolution of Precision's issues would require that we evaluate evidence presented to the trial court. *See* Precision's Answer, at 10 (expressly requesting such review). This is not permitted on collateral review. *See Johnson,* 515 U.S. at 313–20, 115 S.Ct. 2151 (concluding that a summary judgment order that determines a question of evidence suf-

ficiency is not appealable); *Pridgen I; Pridgen III.*

■ To the extent that Precision is arguing against the recognition of a legal duty to report certain information to the FAA, we note the following. First, Precision failed to raise this issue with the trial court in its motion for summary judgment. Therefore, it has waived consideration of this issue. *Steiner v. Markel,* 600 Pa. 515, 968 A.2d 1253, 1257 (2009) (noting that issues not properly preserved before the trial court may not be raised on appeal, including where an issue has been identified in a Pa.R.A.P.1925(b) statement); Pa. R.A.P. 302(a). Second, Precision has failed to properly brief this issue within the framework identified by our Supreme Court in *Pridgen I,* addressing whether (1) the existence of a legal duty to report information to the FAA is separate and collateral to the main cause of action, (2) the right involved is too important to be denied review and (3) the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost. Pa.R.A.P. 311(b). Therefore, a finding of waiver is permissible on this basis as well. Pa.R.A.P. 2101, 2119.

Nevertheless, Precision's question regarding the existence of a duty to report information to the FAA in accordance with federal regulation regarding the airworthiness of an aircraft, its engine or its component parts is not entitled to collateral review. First, and foremost, Precision has repeatedly acknowledged in this litigation and elsewhere that it has a duty to report information in accordance with federal regulations. *See* Precision's Answer, at 9–11; Precision's Appellate Brief, at 50–54; *see generally, Burroughs v. Precision Airmotive Corp.,* 78 Cal.App.4th 681, 93 Cal.

Rptr.2d 124 (2000).[14] Second, the existence and scope of Precision's duty to report information to the FAA is defined by federal safety regulations, not GARA. *See, e.g.,* 14 C.F.R. Part 21. Therefore, Precision's characterization of this issue as rooted in GARA is incorrect, and its attempt to transmutate an acknowledged duty into a question of law implicating the scope of GARA runs afoul the reasoning of our Supreme Court in *Rae,* which warned against bootstrapping otherwise unappealable claims onto meritorious collateral issues. *See Rae,* at 1129 (rejecting the "whole order approach").

At root, Precision questions whether Appellees' evidence constitutes proof of a breach of this acknowledged duty. That is a question of fact, the resolution of which is inextricably related to the underlying cause of action. Therefore, it fails the "separateness" element of the collateral order doctrine. *See Pridgen I* at 432 n. 11.

Further, unlike the right to repose afforded by GARA, an airplane manufacturer's duty to report does not implicate the concerns recognized by Congress in passing GARA: "the impact of long-tail liability on a declining American aviation industry, ... regeneration of essential domestic enterprises, creating employment opportunities for citizens, and favorably affecting the balance of trade between the United States and its trading partners." *Pridgen I,* at 429 (citing Congressional records). Unlike the right to repose, postponing review of this issue until after a final judgment has been entered will not eliminate an important right. *Pridgen I,* at 430 (citing federal precedent recognizing that immunity claims, double jeopardy claims and Speech and Debate Clause challenges must not be postponed).

With one exception regarding Precision's qualification as a manufacturer within the meaning of the fraud exception, Appellants do not present an underlying or dispositive question of law. The trial court based its decision, as to both Appellants, on its conclusion that Appellees came forward with factual evidence in support of their allegations that Appellants engaged in misrepresentations such as would establish an exception to the general statute of repose in GARA. Appellants dispute these facts. The recognition of this factual dispute is the foundation of the trial court's decision. Accordingly, we dispose of Precision's sole claim entitled to collateral review on its merits but quash the appeals in all other respects.

Appeals quashed in part. The order of the trial court appealed at 3156 EDA 2009 is affirmed in part. Requests for costs and fees denied. This matter is remanded to the trial court. Jurisdiction relinquished.

---

**14.** We note that Appellees' response to Precision's motion for summary judgment quotes trial testimony from Precision's President and General Manager, Scott L. Grafenauer, acknowledging that Precision must report unsafe conditions in a model carburetor for which it holds the PMA certificate, even if Precision did not manufacture the carburetor. Appellees' response identifies the location of this testimony as Exhibit 43. We could not locate this exhibit in the certified record. Nevertheless, Precision did not object to this evidence.