J-A15020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TIMOTHY W. MOCK AND TRACY A. MOCK | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 1205 WDA 2022 |
| ROBERT D. ADAMS AND KAREN J. ADAMS, RICHARD CAMPBELL, ESQ. AND CAMPBELL, MILLER, WILLIAMS, BENSON, ETTER & CONSIGLIO, INC., F/K/A MILLER, KISTLER, CAMPBELL, MILLER, WILLIAMS & BENSON, INC. | : : : : : : | |

Appeal from the Judgment Entered October 6, 2022
In the Court of Common Pleas of Bedford County Civil Division at No(s):
2011-00665

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:       **FILED: September 29, 2023**

Timothy W. Mock and Tracy A. Mock appeal from the order granting summary judgment in favor of Robert D. Adams; Karen J. Adams; Richard Campbell, Esq.; and Campbell, Miller, Williams, Benson, Etter & Consiglio, Inc., F/K/A Miller, Kistler, Campbell, Miller, Williams & Benson, Inc. (collectively, "the Defendants"). We affirm.

In 2003, the Adamses entered into an agreement to purchase a business (Mr. Spouting, Inc.) from the Mocks. The Adamses failed to make the requisite installment payments, and as a result, the Mocks obtained confessed

_____

[*] Retired Senior Judge assigned to the Superior Court.

judgments against them in October 2006 ($177,765.28) and March 2007 ($214,203.79).

The Mocks and Adamses entered into a second agreement ("the Agreement") in June 2007. According to the Agreement, the Adamses would transfer the business back to the Mocks. The Agreement also provided that the Adamses would assume tax liability for the business during the years they owned it and "shall ensure that all employment and employee taxes or other taxes attributable to operation of business of Mr. Spouting, Inc. are paid to date. In connection therewith, [the Adamses] agree[d] to indemnify, defend, and hold harmless [the Mocks], their heirs, executors, administrators, successors, and assigns in connection therewith." Compl., 11/4/11, at Ex. A, Agreement, 6/20/07, at ¶¶ 3, 8. In exchange, the Agreement provided the Mocks would mark the confessed judgments against the Adamses as satisfied: "Upon completion by [the Adamses] of all duties and responsibilities under this Agreement, [the Mocks] shall mark the judgments entered against [the Adamses] . . . satisfied, settled and discontinued with prejudice[.]" *Id.* at ¶ 13.[1]

The Mocks later inquired whether the Adamses had paid any outstanding taxes for the years they owned the business. The Adamses' attorney, Campbell, assured the Mocks that the Adamses had satisfied their tax

_____

[1] The Agreement also stated that the previous 2003 agreement was void and that the parties agreed to release each other from any claims arising therefrom. Agreement at ¶¶ 9, 15.

obligations under the contract. The Mocks marked the confessed judgments as satisfied.

In 2011, the Mocks initiated the instant litigation by filing a complaint against the Defendants. They asserted that they had been notified by the IRS that there were unpaid federal taxes outstanding from the years the Adamses had owned the business and the Adamses materially breached the 2007 agreement by failing to pay the taxes. They also claimed that Campbell's misrepresentations had induced them to mark the confessed judgments as satisfied. They brought claims of (I) breach of contract, against the Adamses; (II) promissory estoppel, against Campbell; (III) negligent misrepresentation, against Campbell; and (IV) vicarious liability, against Campbell's law firm. In Paragraph 26 of the complaint, they claimed the following damages:

> a. Damages in satisfying the aforesaid judgments and foregoing collection thereupon which were entered in their favor and against Defendants Adams in the Beford County Court of Common Pleas;
>
> b. Loss of anticipated profits, earnings, dividends, or other monetary benefit as shareholders in the aforesaid corporation as a result of taxes alleged to be due and payable to the IRS by the corporation, which losses are ongoing in nature;
>
> c. Attorney's fees and expenses incurred in having to defend and/or address the claims of the IRS and in having to file this litigation.

Compl. at ¶ 26(a)-(c).

The Adamses filed an answer and new matter. They asserted that in 2007, to comply with the Agreement, they entered a payment arrangement with the IRS for the outstanding taxes and transferred the liability to their

individual social security numbers. They claimed that the business is not the obligor on the outstanding taxes, which they would continue to pay, and that they had not failed to indemnify the Mocks from tax liability pursuant to the Agreement.

Following discovery, each party moved for summary judgment or partial summary judgment. In relevant part, the Adamses asserted that they had finished paying the outstanding taxes and had obtained a Certificate of Release from the IRS. Campbell offered the expert opinion of a CPA, who opined that the tax obligations had been satisfied and the Mocks and Mr. Spouting, Inc. had no tax liability for the years the business was owned by the Adamses. The court denied the motions.

Just over a year later, on the eve of trial, the Adamses filed a motion for reconsideration of the order denying their motion for summary judgment. They argued, in relevant part, that the Mocks had "failed to demonstrate any harm or loss as a result of an alleged breach of contract." The Adamses' Mot. for Reconsideration of the Mot. for Summary Judgment, 11/9/20, at ¶ 3. The next day, on the morning of trial, the Mocks' counsel informed the trial court *in camera* that the Mocks would not be pursuing damages based on any outstanding tax liability. They conceded they could not present evidence of damages on this issue. ***See*** Trial Court Memorandum Opinion, 7/6/21, at 1, 7 n.5; N.T., 1/12/21, at 21-23.

The parties agreed the court should continue trial and reconsider its denial of summary judgment. While argument was pending, Campbell filed a

second motion for summary judgment, and the Mocks countered with a motion for reconsideration. At argument, the Mocks' counsel confirmed that the Mocks would only be pursuing damages for foregoing collection of the confessed judgments, and not presenting any evidence of damages due to unpaid tax obligations or attorneys' fees. N.T. at 16-19, 22-23.

After argument, the court granted partial summary judgment, dismissing the Mocks' claims for damages in Paragraphs 26(a)-(b) of the complaint.[2] The parties entered a stipulation in which the Mocks withdrew their claims for damages relating to attorneys' fees so that the court could enter final judgment and the Mocks could proceed to appeal the dismissal of the claims for damages in Paragraphs 26(a)-(b).[3] The court entered judgment in favor of the Defendants, and the Mocks appealed.

The Mocks raise the following issues:

A. Whether the trial court abused its discretion or committed an error of law in granting the motion for reconsideration of Defendants Adams and, in turn, Defendants' motions for summary judgment as to particular items of damages when the trial court

---

[2] The Mocks appealed from this order, but we quashed the appeal because the trial court had not made an express determination that an immediate appeal from the interlocutory order would facilitate resolution of the entire case. **See Mock v. Adams**, No. 905 WDA 2021 (Pa.Super. filed Feb. 24, 2022).

[3] According to the stipulation, the Mocks only withdrew their claims for attorneys' fees in Counts I, II, and III of the complaint. Therefore, it appears their claims for attorneys' fees in County IV of the complaint were still at issue following the stipulation. Nonetheless, the court entered judgment for the Defendants in accordance with the stipulation. This was a final order which disposed of any remaining claims. Furthermore, as stated above, the Mocks asserted at the hearing that they would not be pursuing attorneys' fees.

did not expressly grant reconsideration by order of court within thirty (30) days of the date of filing of such motion?

B. Whether the trial court abused its discretion or committed an error of law in granting Defendants Adams' motion for reconsideration and, in turn, their motions for summary judgment so as to preclude [the Mocks] from recovering damages in their breach of contract action for foregoing collection of the judgments previously confessed against such Defendants where the trial court failed to consider the intent of the contract between the parties and all of the terms and provisions thereof in ascertaining such intent and/or to correctly interpret the same?

C. Whether the trial court abused its discretion or committed an error of law in granting Defendants Adams' motion for reconsideration and, in turn, Defendants' motions for summary judgment so as to preclude [the Mocks] from recovering damages in their breach of contract action for foregoing collection of the judgments previously confessed against such Defendants where [the Mocks], contrary to the trial court's view, did not receive the benefit of the bargain as set forth in the contract in foregoing collection of the prior confessed judgments?

D. Whether the trial court abused its discretion or committed an error of law in ruling that [the Mocks] could not recover damages in their negligent misrepresentation action against Defendant Campbell and his law firm for foregoing collection of the judgments previously confessed against Defendants Adams where the trial court decided such issue on the basis of contract law rather than principals applicable to a claim for negligent misrepresentation?

E. Whether the trial court abused its discretion or committed an error of law in ruling that [the Mocks] could not recover damages in their negligent misrepresentation action against Defendant Campbell and his law firm for foregoing collection of the judgments previously confessed against such Defendants Adams where the court's decision appears to treat the breach of contract . . . against Defendants Adams and the negligent misrepresentation against Defendant Campbell as the same, rather than separate, act(s) giving rise to separate causes of action?

F. Whether the trial court abused its discretion and/or committed an error of law in denying [the Mocks'] motion for reconsideration of the court's denial of partial summary judgment as to

> Defendants' ability to raise the affirmative defense of failure to mitigate damages when such defense was never raised in new matter and the trial court denied Defendants' motions to amend their answers with new matter to include such affirmative defenses?

The Mocks' *Br.* at 4-6.

## I. Jurisdiction to Reconsider of the Denial of Summary Judgment

The Mocks first argue that the court did not have jurisdiction to alter its order denying summary judgment because it did not expressly grant reconsideration within 30 days of entering that order.[4] *See id.* at 20-21 (citing *PNC Bank, N.A. v. Unknown Heirs*, 929 A.2d 219 (Pa.Super. 2007)). Whether the trial court has jurisdiction to act on a motion is a question of law. *Annechino v. Joire*, 946 A.2d 121, 123 n.3 (Pa.Super. 2008). Therefore, "our standard of review is *de novo* and the scope of our review is plenary." *Bastian v. Sullivan*, 117 A.3d 338, 343 (Pa.Super. 2015).

A trial court will lose jurisdiction 30 days after entering a final order unless it expressly grants reconsideration within the 30-day period. 42 Pa.C.S.A. § 5505; Pa.R.A.P. 1701(b)(3); Pa.R.A.P. 903(a); *PNC Bank, N.A.*, 929 A.2d at 226. Here, however, the court did not enter a final order when it denied the motions for summary judgment. Rather, its order was non-final because it did not resolve all claims against all parties. *See* Pa.R.A.P. 341(c);

---

[4] Although this argument seems at odds with the fact that the Mocks acquiesced to the continuance of trial so that the court could reconsider the motion for summary judgment, and the Mocks filed their own motion for reconsideration, the Mocks raised the issue of jurisdiction during the hearing on the motions. Moreover, the issue of whether the court had jurisdiction is not waivable. *Strasburg Scooters, LLC v. Strasburg Rail Rd., Inc.*, 210 A.3d 1064, 1067 (Pa.Super. 2019).

***Stewart v. Precision Airmotive, LLC***, 7 A.3d 266, 271 (Pa.Super. 2010). The court therefore did not need to grant reconsideration of the order within the following 30 days to retain jurisdiction and act on the motion for reconsideration. ***See Szwerc v. Lehigh Valley Health Network, Inc.***, 235 A.3d 331, 336 (Pa.Super. 2020) (discussing application of 42 Pa.C.S.A. § 5505, which provides that a trial court has authority to modify or rescind an order for 30 days, to final orders); ***see also Commonwealth v. Impellizzeri***, 661 A.2d 422, 432 (Pa.Super. 1995) (refusing to extend law of the case rule to prevent trial court from modifying its own pre-trial order following a change in circumstances).

## II. Damages – Breach of Contract

In their next two issues, the Mocks argue the court erred in concluding they could not prove they sustained damages from their having marked the confessed judgments as satisfied. They assert that the Adamses "had a contractual obligation . . . to make sure all federal employment taxes . . . were paid to date at the time the contract was entered and to provide the Mocks with proof of that." The Mocks' Br. at 24 (emphasis in original). The Mocks argue the Agreement also provided that the Adamses "had a duty to pay the federal taxes before the Mocks relinquished their ability to collect on the judgments." ***Id.*** at 25 (emphasis in original). The Mocks claim that in failing to comply with these provisions, the Adamses materially breached the Agreement, and that the amount of their resulting "reliance and/or restitution" damages — which they claim was the amount of the confessed judgments —

was certain. *Id.* at 25, 28. The Mocks also argue that they did not receive "the benefit of the bargain," because when the Adamses transferred the business back to them, it was not unencumbered by tax liability as the Agreement shows the parties had intended.

Summary judgment may be granted "in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Nicolaou v. Martin*, 195 A.3d 880, 891 (Pa. 2018). The calculation of damages for the breach of contract alleged in this case presents a question of law. *Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Fam. Mkt., Inc.*, 98 A.3d 645, 653 (Pa.Super. 2014). Therefore, our standard of review is *de novo* and our scope of review is plenary. *Id.*

The trial court observed that the Mocks sought both (1) to return to the position they would have occupied prior to the Agreement, by regaining the right to collect on the amount of the confessed judgments, which represented the value of the business; and (2) to retain ownership of that same business, which they had acquired through the Agreement. Trial Ct. Mem. Op. at 6. The court noted that "if the [Agreement] had been performed, [the Mocks] would have [had] the [b]usiness free and clear of any tax obligation—nothing more and nothing less." *Id.* at 6 n.4. The court found that even if the Mocks could prove the Adamses had breached the Agreement, they were not entitled to the "double recovery" of retaining both the business and the confessed judgments. *Id.*

We see no error in this determination. We accordingly affirm the court's dismissal of the Mocks' claim for damages for their having marked satisfied the confessed judgments in the breach of contract claim against the Adamses.

### III. Damages – Negligent Misrepresentation

In their fourth and fifth issues, the Mocks argue that the court erred in conflating their negligent misrepresentation claim against Campbell with their breach of contract claim against the Adamses. They stress that the negligent misrepresentation claim was based not on the Adamses' failure to satisfy the tax obligations, but on Campbell's misstatements that the obligations had been satisfied. They argue that they justifiably relied on Campbell's misrepresentations, and "suffered injury in foregoing collecting against the judgments[.]" The Mocks' Br. at 32. They argue that recovering damages in the amount of the confessed judgments will put them in a position equivalent to their position prior to the misrepresentation.

The trial court did not separately address the counts against Campbell and his law firm for negligent misrepresentation. However, it stated that its ruling applied "across all Defendants," because the Mocks had alleged the same damages in each count. Trial Ct. Mem. Op. at 7 n.6.

We affirm the court's dismissal of the Mocks' claims for damages resulting from having marked the confessed judgments as satisfied in their negligent misrepresentation claims. To state a claim for negligent misrepresentation, a plaintiff must allege, "(1) a misrepresentation of a material fact; (2) made under circumstances in which the actor should have

known of its falsity; (3) with an intent to induce another to act on it; (4) thereby causing injury to a party who justifiably relied upon the misrepresentation." ***Gregg v. Ameriprise Fin., Inc.***, 245 A.3d 637, 646 (Pa. 2021).

Here, the Mocks' claim fails for want of injury. The Mocks allege their injury is that they performed under the Agreement by marking the confessed judgments as satisfied, while the Adamses allegedly were in breach. However, execution of a contract into which they voluntarily entered is not an injury. Even if Campbell had never made an alleged misrepresentation, and even if the Mocks had realized that the Adamses were in alleged breach before they marked the confessed judgments as satisfied, the Mocks would still have had a duty to mark the confessed judgments satisfied once the Adamses paid the taxes. The Mocks do not argue that they would have been able to rescind the Agreement, or that their marking the confessed judgments at an earlier date caused any losses.

In addition, even if their having marked the confessed judgments as satisfied could be considered as injurious in their negligent misrepresentation claim, the Mocks would be barred from recovery under the economic loss rule. They have not alleged any physical injury or property damage resulting from the alleged negligent misrepresentation. ***See Excavation Techs., Inc. v. Columbia Gas Co. of Pa.***, 936 A.2d 111, 114-15, 115 n.7 (Pa.Super. 2007) (*en banc*). Although this rule does not apply to a "professional information provider," ***id.*** at 116, the Mocks have not argued that Campbell fits that bill.

## IV. Mitigation of Damages

In their sixth and final issue, the Mocks assert that the Adamses waived any argument that they (the Mocks) failed to mitigate their damages, by failing to plead this as an affirmative defense. Because we affirm the trial court's dismissal of damages in the amount of the confessed judgments, and the Mocks withdrew their remaining claims, whether the Mocks failed to mitigate damages and whether the Defendants waived that defense are moot.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2023